# CAMPBELL v. DAVIS.

### No. 7059.   Opinion Filed July 27, 1915.

### Rehearing Denied August 13, 1915.

### (152 Pac. 829.)

1. **PLEDGES—Conversion of Collateral—Variance—Sufficiency of Evidence.** Where D. sued C. for the conversion of certain collateral pledged to him to secure the payment of a principal note alleged to have been made payable to the order of C., or a payee designated by him, and where the proof showed the principal note was made, executed, and delivered to C., payable to the bank of which C. was cashier, **held**, no variance. Evidence examined, and **held** further that, as the same reasonably tends to support the verdict in favor of plaintiff, the judgment will not be disturbed.

2. **PLEDGES—Conversion of Collateral—Theory of Defense—Instructions.** The charge of the court examined, and **held** to fairly instruct upon defendant's theory of the case.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Action by Ben F. Davis against Colin S. Campbell. Judgment for plaintiff, and defendant brings error. Affirmed.

*Stuart, Cruce & Cruce* and *Bernstein & Spiers,* for plaintiff in error.

*McAdams & Haskell,* for defendant in error.

TURNER, J. On November 4, 1913, the defendant in error, Ben F. Davis, in the district court of Oklahoma county, sued Colin S. Campbell, plaintiff in error, in conversion. The petition substantially states that on May 27, 1912, plaintiff pledged to Campbell a certain promissory

note, dated May 18, 1912, for $5,000, made, executed, and delivered to plaintiff as payee by J. H. Bolinger, due one year after date; that at the same time he also pledged to Campbell ten first mortgage bonds of the Shawnee-Tecumseh, Traction Company, of the par value of $1,000 each, both note and bonds as collateral for the payment of a certain promissory note for the principal sum of $5,000 that day made, executed, and delivered by him payable to the order of said Campbell or a payee designated by him. The petition further alleged that on June 27, 1913, without the knowledge or consent of plaintiff, defendant converted the collateral by collecting the note and selling the bonds, and that, as the proceeds of the Bolinger note paid the principal note payable to Campbell; Campbell was indebted to him in the sum of $6,000, for which amount the bonds sold, less certain expenses incident to their sale, in all the sum of $5,777.50. After answer filed, in effect, a general denial, there was trial to a jury and judgment for plaintiff for the amount prayed, and defendant brings the case here.

Among other things, it is assigned that the verdict is contrary to the law and the evidence. The action was prosecuted on the theory that the Bolinger note and the traction bonds were pledged to Campbell as collateral security for the payment of plaintiff's note of $5,000, made payable to Campbell for a loan of that amount. The suit was defended on the theory that the transaction was not a loan from Campbell to plaintiff of that amount, but a sale of the Bolinger note and the bonds by plaintiff to Campbell, the consideration for which was the payment of two drafts, aggregating $5,000, drawn by plaintiff on Campbell and payable to A. B. and L. E. Garrett, of Laredo, Tex., and hence defendant owed plaintiff nothing.

To maintain the issues on his part plaintiff, after admitting the execution of Exhibit A, introduced it in evidence. It reads:

"May 27, 1912.

"For value received and in consideration of Colin S. Campbell, or the City State Bank, paying two drafts drawn by the undersigned, Ben F. Davis, on said Colin S. Campbell for thirty-five hundred ($3,500.00) dollars and fifteen hundred ($1,500.00) dollars, respectively, and payable to L. E. and A. B. Garrett, of Laredo, Texas, I, Ben F. Davis, hereby agree and bind myself as follows:

"I will give to said parties or either of them a note for five thousand ($5,000.00) dollars the security on which is to be acceptable to said party taking the note, and in addition thereto and as a part consideration agree and bind myself to deliver to said Colin S. Campbell, to be retained by him as his property, the following  One hundred and sixty shares of stock of $100.00 each in the Rio Grande Valley Land & Irrigation Company, which represents sixteen (16) per cent. of the capital stock of said company of $100.00 each, also twenty-five shares of the capital stock of said Carizo Valley Land & Irrigation Company which represents twenty-five (25) per cent. of the capital stock of said company.  These companies own five thousand acres and twelve hundred and fifty acres respectively in Mexico Nueve Laredo, which was purchased by myself and associates from A. B. or L. E. Garrett, and the stock to be delivered to said Colin S. Campbell is to represent the percentage of stock, in each company heretofore stated, that is sixteen per cent. of the capital stock of the R. G. V. L. & I. Co. and twenty-five per cent. of the capital stock of the C. V. L. & I. Co.  This provision is made so that if the value of the shares is changed the amount to be delivered when issued is to represent the percentage above set forth, and if for any reason stock is not issued I will have transferred to said Colin S. Campbell an interest in each of said properties representing the proportions above mentioned, which interest is to be an undivided interest.

"The true intent of this agreement is for the under-signed, Ben F. Davis, to convey to said Colin S. Campbell the above-mentioned interest in said properties, which is and does represent one-half of my undivided interest in the Garrett Land deal recently made by myself and associates.

"The consideration for which is set forth above.

"Signed and delivered by the undersigned this 27th day of May, A. D. 1912.

"[Signed] BEN F. DAVIS.

"Subscribed and sworn to before me this 27th day of May, 1912.

"[Seal]   ROBERT L. SMITH, *Notary Public.*

"My commission expires April 19, 1914."

As a part of the same transaction, he also introduced in evidence Exhibit B, executed and delivered to defendant at the same time in the bank of which he was cashier. It reads:

"$5,000.00.

"Oklahoma City, Oklahoma, May 27, 1912.
"Name. Ben F. Davis.
"Post.————————————

"Amount $5,000.00.   Due 8-26-12.

"Ninety (90) days after date, for value received, I, we, or either of us, jointly or severally promise to pay to the order of the City State Bank, at its banking office in Oklahoma City, Oklahoma, five thousand dollars with interest at the rate of ten per cent. per annum from date, payable semi-annually, and if not paid when due it shall be added to the principal and draw ten per cent. interest. The makers and indorsers of this note guarantee payment thereof and thereby severally waive presentment for payment, notice of nonpayment, protest and notice of protest, and diligence in bringing suit against any party thereto, and sureties consent that time of payment may be extended without notice thereof. A

failure to pay the interest within ten days after it be-
comes due shall cause the whole to become due and pay-
able. All the parties to this note agree if it is placed in
the hands of an attorney for collection they will pay a
reasonable attorney's fee. The following collateral at-
tached: Note of J. H. Bolinger, dated May 18, 1912,
payable one year after date with interest at 6 per cent.
from date. Twelve bonds of the Shawnee-Tecumseh Com-
pany first mortgage, five per cent. due 1926, for one
thousand dollars each, also deed for lots seven and eight,
Fletcher Heights Addition to Oklahoma City, comprising
ten acres.

                                        "BEN F. DAVIS.

"With full authority to said bank or its assigns to
sell the same at public or private sale without notice on
nonpayment of this note."

Also as a part of the same transaction, he proved the
assignment of the Bolinger note to defendant and its de-
livery to him, together with the ten traction bonds men-
tioned in Exhibit B. He further proved the payment by
Campbell of the drafts drawn by plaintiff on him in favor
of the Garretts, the collection by Campbell of the Bolinger
note, aggregating, principal and interest, $5,300, and a
sale by him of the ten bonds for $6,000. He also intro-
duced in evidence the Bollinger note, marked "Paid," and
testified that he had not sold said note or bonds to Camp-
bell at any time, but had pledged them to him as collateral
pursuant to his written agreement evidenced by Exhibits
A and B, and that the amount due him after satisfying
the principal note with the proceeds of the sale was
$5,777.50, and rested. To maintain the issues on his part,
defendant introduced evidence tending to prove that, after
the execution and delivery of Exhibits A and B, he sub-
mitted the proposition therein contained to the bank of
which he was cashier; that the bank refused to make the

loan, whereupon, out of his own funds, he paid the drafts, and thereafter entered into an executed parol agreement with plaintiff whereby defendant purchased of plaintiff six of the hypothecated bonds and the Bolinger note and the interest in the Mexican land indicated in Exhibit A, together with some other property, all in consideration of $5,000, or the amount it cost defendant to take up the drafts drawn on him by plaintiff as stated. But the jury decided the issues in favor of the plaintiff and in effect found the transaction to be a pledge by plaintiff to defendant of the Bolinger note and the ten bonds as collateral security for a loan by Campbell to plaintiff, and, as such is amply sustained by the evidence apparent on the face of Exhibits A and B, aside from the parol evidence in the case, we will not disturb the verdict.

There is no material variance, if any, between the allegation that the principal note was payable to Campbell "or a payee designated by him," and the proof made by Exhibit B of a principal note for $5,000 payable to the order of City State Bank. This for the reason that, as, pursuant to plaintiff's agreement evidenced by those exhibits, defendant had the option to have the note made payable either to himself or to the bank and exercised the option to have it made payable to the bank, proof of a note to either corresponded to his *allegata*.

There is no merit in the contention that the court failed to charge upon defendant's theory of the case. His defense was a general denial, but under it his evidence was levelled to prove a subsequent executed parol agreement intended to vary the written contract. Instruction No. 1 states plaintiff's contention and the theory of his case. The second tells the jury where, upon the general denial, the burden of proof lay. The third stated fully

defendant's contention and the theory of his defense, and the fourth charges concerning the weight of the evidence and the credibility of witnesses. The fifth told the jury that defendant was not seeking to recover anything, but was seeking only to defeat the claim of plaintiff and that plaintiff must make out his own case by a preponderance of the evidence; and the sixth that if he had done so he was entitled to recover.

Finding no error in the judgment, the same is affirmed.

All the Justices concur.